290 So.2d 343 (1974)
Leslie A. LAIRD
v.
STATE FARM INSURANCE CO. et al.
No. 5233.
Court of Appeal of Louisiana, Fourth Circuit.
January 31, 1974.
On Application for Rehearing Denied March 8, 1974.
Writ Refused April 26, 1974.
*345 The Law Offices of Steven R. Plotkin (Owen J. Bradley), New Orleans, for plaintiff-appellant.
Sessions, Fishman, Rosenson, Snellings & Boisfontaine (Edward P. Lobman) and Carl J. Selenberg, New Orleans, for defendants-appellees.
Before LEMMON, GULOTTA and SCHOTT, JJ.
LEMMON, Judge.
In the two vehicle collision which gave rise to this litigation, Leslie Laird sustained injuries while riding as a passenger in a panel truck driven by Adrian W. Ballam. Laird and Ballam were employees of Dick Evans, Inc., the owner of the truck. The other vehicle involved in the accident was owned and operated by Floyd J. Malbrough, who was insured by State Farm Mutual Automobile Insurance Company. Laird proceeded to trial against Malbrough and State Farm, after numerous other defendants were dismissed voluntarily, by compromise, or by summary judgments.[1]
In answering special interrogatories, the jury determined (1) Laird was not negligent, (2) Ballam was negligent, and (3) Ballam's negligence was a proximate cause of the accident. The jury affirmatively answered the next listed interrogatory that Laird and Ballam were "on a joint venture at the time of the accident so as to impute negligence from Adrian Ballam to Leslie A. Laird." Under the instructions outlined in the interrogatories, the jury was not required after affirmatively answering that question to answer the interrogatory concerning Malbrough's negligence.
In accordance with the jury verdict, the trial court dismissed Laird's suit against Malbrough on the basis of imputed contributory negligence, and Laird appealed.
The primary issue on appeal is whether Ballam's negligence was properly imputed to Laird so as to prevent his recovery against Malbrough. Since we conclude that the judgment must be reversed on this issue, we must also consider Malbrough's negligence and the quantum of damages to which Laird is entitled.

LIABILITY OF MALBROUGH AND BALLAM
The accident occurred on a clear day on U.S. Highway 90 near the St. Charles-Jefferson Parish line. At this point the highway *346 was straight and level, consisting of four lanes divided by a raised neutral ground about eight feet wide. On each side of the paved roadway was a shelled shoulder, which was wide enough for emergency parking.
Shortly before the accident involved in this suit, Malbrough had been struck from the rear while waiting on the highway to make a left turn through an opening in the neutral ground. After the first collision, Malbrough's car came to rest in the left eastbound lane, about 50 paces from the opening, and the other car came to rest at an angle within the neutral ground opening. Immediately after this collision, each driver got out of his car and checked on the other's injuries. A State trooper then came upon the scene, determined that neither driver was injured, reported the accident by radio, and left.
Although he was aware of the danger of being struck again from the rear, Malbrough stated he did not move his car because the gas tank was in the left fender which was against the wheel. However, Malbrough made no attempt whatsoever to warn approaching traffic of the hazard, but simply stood by, "hoping and praying" that no one would hit his car from the rear.
The Ballam-Malbrough collision occurred about five minutes after the first collision. Ballam testified that he had been driving about 45 to 55 miles per hour; that he had been in the left lane for about seven miles; that when he first noticed the Malbrough vehicle, he was about three blocks away; that when he was about 100 feet away, he realized that the car was stopped; that he could not move into the right lane because another car was rapidly approaching from his rear in that lane; and that he attempted to brake, but could not prevent a violent collision into the Malbrough vehicle.
A disinterested witness, who had passed Ballam two to four minutes before the accident, estimated Ballam's speed at about 45, but stated that Ballam was traveling in the right lane. This witness also testified that he was traveling at seventy miles per hour, that he saw the stopped cars ahead when he was about a mile away, and that he realized the cars were stopped when he was at least a quarter of a mile away. After passing the stopped cars, he witnessed the Ballam-Malbrough collision in his rear view mirror, but didn't recall seeing any other cars in the vicinity.
The basis of tort liability is the existence of a duty and the violation of that duty which results in damage to another. Malbrough's failure to remove his car from the highway or to protect approaching traffic violated the duty imposed by R.S. 32:141.[2] However, violation of a criminal statute does not impose civil responsibility unless the act is the legal cause of damage to another. Laird v. Travelers Ins. Co., 263 La. 199, 267 So.2d 714 (1972).
In accordance with the method outlined in Pierre v. Allstate Ins. Co., 257 La. 471 242 So.2d 821 (1970), we determine legal cause by first determining whether the act complained of was a substantial factor in causing the accident, then by determining *347 what duty was imposed and whether the risk created by a breach of that duty was one for which the statute intended to offer protection, and finally by determining whether there was a breach of that duty.
Every act leading up to an accident is not a cause-in-fact; to be deemed a legal cause, the act must be a substantial factor without which the accident would not have occurred. Laird v. Travelers Ins. Co., supra. Malbrough's stationary car occupied a lane ordinarily used by moving vehicles. Had Malbrough removed the car from this lane or had he warned approaching traffic of the obstruction, the accident would not have occurred. Therefore, Malbrough's failure to remove the car or to warn approaching traffic was a substantial factor in causing the accident.
R.S. 32:141 imposes a duty to keep highways open for the safe flow of traffic or to warn approaching motorists when the highway is blocked. When Malbrough violated the statute, he created the exact risk the statute was designed to prevent, namely, that a confused or momentarily inattentive driver would collide with the vehicle illegally obstructing the highway unless warned of the hazard.
Inasmuch as we have determined (1) Malbrough's dereliction was a substantial factor in causing the accident, (2) a statute imposed a duty upon him to remove his car or to protect approaching traffic, (3) he breached that duty, and (4) his breach created a risk which was within the scope of protection intended by the statute, we conclude that Malbrough is liable to respond in damages. Pierre v. Allstate Ins. Co., supra.
As to Ballam's conduct, we agree with the jury's conclusion that his negligence also caused the accident. He was driving on a straight, level road on a clear day at a speed well below the posted limit. Had he been keeping a proper lookout, he should have seen Malbrough's vehicle and determined that it was stopped in sufficient time to take the proper steps to avoid a collision. He was almost upon the stopped car before he realized the danger which was apparent under the existing conditions from a distance much further away. We therefore hold that the concurrent negligence of Malbrough and Ballam caused the accident.
The jury also determined that Laird was not contributorily negligent. He was reading a newspaper at the time of the collision. There was no evidence that Laird did anything which contributed to the accident or failed to do anything he should have done which would have avoided the accident. We therefore affirm the jury determination that Laird was not independently negligent and that no breach of duty by him caused the accident.

JOINT VENTURE AND IMPUTED CONTRIBUTORY NEGLIGENCE
Laird and Ballam were both employed by Dick Evans, Inc., a corporation engaged in deep sea diving operations. At the time of the accident these two employees operated as a team, Laird as the diver and Ballam as the diver's tender.
When Laird had been promoted from diver's tender to diver, the corporation permitted him full discretion in employing and training the person who would serve as his tender. Laird thus selected and trained Ballam, who had worked with Laird for about five months prior to the accident. Ballam was paid by the corporation at a salary fixed by the corporation, and Laird was in effect Ballam's immediate supervisor.
Two days before the accident, Laird and Ballam were directed to go to a diving location. They drove in a company-owned truck, which had been furnished to Laird "for company purposes", from Metropolitan New Orleans to Bayou Boeuf, and then proceeded by boat to the diving site. After they completed the assignment, they were returning to the New Orleans area in the truck when the accident occurred.
*348 On the return trip Laird had commenced driving, but Ballam took over after Laird had stopped to purchase the newspaper he was reading at the time of the accident. Ballam testified that Evans's employees customarily drove the company vehicles and that driving the truck containing their equipment was part of his routine, ordinary duties.
During the course of the trial, defendants filed an amended answer pursuant to C.C.P. art. 1154, amending the pleading to conform to the evidence and raising the issue of imputing Ballam's negligence to Laird. The amended answer alleged that Ballam was Laird's employee, or alternatively was engaged in a joint venture with Laird, and that at the time of the accident Laird "had the right and/or duty to control the vehicle."
The jury found that Laird and Ballam were engaged in a joint venture at the time of the accident. In accordance with the special charge, Ballam's negligence was imputed to Laird so as to constitute contributory negligence and bar Laird's recovery.
The undisputed facts of the present case cannot support the legal conclusion that Laird and Ballam were engaged in a joint venture. They were in the course and scope of their employment with Evans, jointly performing the task assigned to them by that employer. Traveling to and from the various places where diving operations were conducted was an integral part of their employment, and driving the truck furnished for this purpose was an employment duty of each.
Furthermore, Laird's and Ballam's interest in transporting themselves and their equipment to and from various diving sites was that of employees working for contractual wages, rather than the type of interest required of joint venturers. As to control, Laird was the ranking employee and therefore had a degree of supervisory control over Ballam in the entire diving operation; however, that control was not inherently Laird's but was delegated to him by the employer who had ultimate control over both.
On these facts we conclude that Laird and Ballam were simply fellow employees of the same employer, both acting in the course and scope of that employment and in furtherance of the employer's business, using a vehicle furnished to them for that purpose. We hold inapplicable to the present case the theory of a joint venturer's liability for the torts of a co-joint venturerthat each is the master or principal of the other who is acting on behalf of the joint venture and therefore responsible for the other's torts under the codal articles and jurisprudence governing master-servant and principal-agent relationships.
We therefore hold that the fact fellow employees are acting in the course and scope of employment of their employment and in furtherance of their employer's business does not in itself make them participants in a joint venture. See Martin v. Yazoo and M. R. Co., 181 So. 571, 580 (La.App. 2d Cir. 1938), cert. denied; Restatement, Second, Torts § 491, note f.
Defendants argue, however, that Laird was in charge and was in effect the owner of the vehicle with the theoretical right of control over the driver. Citing Rodriguez v. State Farm Mut. Ins. Co., 88 So.2d 432 (La.App. 1st Cir. 1955), defendants contend that the negligence of a driver is imputable to the owner-passenger when the trip is for the benefit of the owner or for the mutual benefit of the owner and the driver.
The Rodriguez theory was based on agency concepts, a relationship we have determined does not exist in the present case. Furthermore, the Supreme Court in Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963), specifically disapproved of the Rodriguez case and other decisions, insofar as those cases barred the recovery of an owner-passenger solely on the ground *349 that he had a theoretical right of control over the driver. The court observed:
"It is unrealistic to hold, in the present day uses of motor vehicles when heavy traffic is the rule and not the exception, that the occupant of a motor vehicle has factually any control or right of control over the driving of the operator."
We therefore conclude that the jury verdict and judgment barring Laird's recovery on the basis of imputed contributory negligence must be reversed.

QUANTUM
In the November, 1966 accident Laird sustained a severe, comminuted fracture of the left tibia, a closed fracture of the medial malleolus, and a laceration of the temple area. An orthopedic specialist surgically closed the fracture of the tibia and, by use of a pin in the heel, placed Laird in skeletal traction to align the bones. On three occasions Laird was administered a general anesthetic to change the dressings. He remained in traction until December 22, when the surgeon performed an internal fixation of the ankle and inserted a screw across the fracture. Laird was then placed in a Spica cast. Although he was discharged from the hospital on December 30, Laird had to remain on his back in bed while in this cast.
On February 1, 1967, Laird was hospitalized for three days in order to change the cast to a long leg cast.
On April 8 the surgeon placed some bone, taken from the pelvic area, around the fracture site to stimulate healing. After this 16 day period of hospitalization, Laird wore a cast which allowed him to sit in a chair and to walk on crutches. In July the cast was replaced by a brace, which allowed additional motion, and Laird began a physical therapy regime. By the end of August, Laird began full weight bearing, and in December the doctor discontinued the brace, inasmuch as the fracture had healed.
Laird gradually attained increased motion, full extension, and flexion to 105, although he frequently complained of pain. In September, 1968 the doctor estimated a 30% permanent disability of the leg.
In December, 1969 Laird sustained a fracture of the left patella in a fall on an icy sidewalk, and his kneecap was eventually removed. However, his medical and lay evidence did not adequately support his contention that his continuing disability caused the fall. Therefore, we do not consider any disability relative to the 1969 fall in setting the award in this case.
During 1970 Laird complained of increased pain and swelling in the ankle, which the doctor stated was the normal end result of the severe injury. The doctor found some loss of motion and some indication of degenerative change. On January 22, 1971 the doctor estimated a 40% permanent physical impairment of the left leg, but did not attribute a significant amount of this disability to the removal of the kneecap. Stating that Laird could never return to diving, the doctor predicted that Laird would probably encounter difficulty in any activity which required strenuous use of the leg or prolonged standing, or walking on uneven surfaces, and would be restricted to light to moderate activities which did not require carrying or lifting weights in excess of 25 pounds.
In addition to these injuries, Laird developed psoriasis on his left leg when the cast was removed. A dermatologist opined that the disease began as a reaction to the cast and eventually spread to other portions of the body. Over the next two and a half years, this doctor treated Laird approximately 85 times for the psoriasis and for another skin disease probably caused by anxiety. At the time of trial the psoriasis was still present.
Laird's claim as to personality changes and the need for continued psychiatric care was not adequately proved.
As to the claim for loss of wages and impairment of earning capacity, Laird was *350 33 years old at the time of the accident and could reasonably have expected to work as a diver until age 45 or 50. He had been a diver's tender for one year and had become an apprentice diver in April, 1966. He earned approximately $8,500.00 during 1966 before the November accident.
In 1967 Laird first performed light clerical work for Evans and in November began employment assembling diving helmets for another company, a job which lasted through the middle of 1969. He earned approximately $3,900.00 in 1967, $6,500.00 in 1968, and $3,000.00 in 1969. In 1970 he worked about four months on a special job as a foreman of diving tenders, earning about $2,700.00, in addition to $900.00 he earned in cosmetic sales. At the time of trial in March, 1971, he was on call with a diving firm but had not yet worked that year.
At the time of his injury Laird had been accepted for a diving job in Egypt, which ultimately lasted seven months. The divers who performed that job earned over $3,000.00 per month.
We set the award as follows:

 Pain and suffering $25,000.00
 Future pain and suffering 10,000.00
 Loss of income 20,000.00
 Permanent disability and impairment
 of earning capacity 75,000.00
 $130,000.00

Inasmuch as Laird compromised his claim against a joint tortfeasor (Ballam) and deprived defendants of their right to contribution, his recovery will be limited to one-half of his damages.
Accordingly, the judgment of the trial court is reversed, and it is now ordered that there be judgment in favor of Leslie A. Laird and against State Farm Mutual Automobile Insurance Company and Floyd J. Malbrough, in solido, in the sum of $65,000.00, plus interest from the date of judicial demand and all costs of these proceedings. The judgment against the insurer is limited to the limit of liability provided in the policy. Expert fees are set at $150.00 for Dr. Joseph J. Frensilli and $100.00 for Dr. David F. Bradley.
Reversed and rendered.

ON APPLICATION FOR REHEARING
PER CURIAM.
On application for rehearing defendants argue R.S. 32:141, subd. A indicates what a motorist with a disabled car must do to "protect traffic", as required by R.S. 32:141, subd. B, namely, to leave an unobstructed width of highway for free passage and a clear view of the vehicle from 200 feet in either direction.
Regardless of the statute, Malbrough owed a duty to other motorists to act as a reasonably prudent man under the circumstances. Malbrough, during the five minutes between accidents, was well aware of the danger of being struck a second time from the rear, yet took no steps to warn approaching motorists. He thus violated his duty of reasonable care.
The application is denied.
NOTES
[1] See Laird v. Travelers Indem. Co., La.App., 236 So.2d 561 (1970) and 237 So.2d 900 (1970).
[2] R.S. 32:141, subds. A and B provide:

"A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
"B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic." (Emphasis supplied)