LANDRY, Judge.
Defendant, David Dupre and his insurer, The Millers Mutual Fire Insurance Company (Appellants), appeal dismissal of their third party claims against Patrick Ber-niard, Dupre’s alleged joint tort-feasor, and Berniard’s employer, South Central Bell Telephone Company (Bell). Appellants’ third party demands stem from this main action brought by plaintiff Levron against Appellants to recover damages sustained in an automobile accident. The accident occurred when a vehicle driven by Dupre rear ended Levron’s car which had stopped on a public highway partially blocked by Bell’s repair van which Ber-niard had parked in a manner partly blocking the traveled portion of the road. Lev-ron named only Dupre and Miller as defendants in the main action. Judgment was rendered below in favor of Levron against Appellants in the sum of $2,500.00 for personal injuries; $300.00 car rental, and $300.00 automobile depreciation, all of which awards are contested on appeal. Awards to Levron for medical expense and loss of earnings are not disputed herein. Appellants maintain the trial court erred in awarding Levron excessive damages for personal injuries, awarding damages for car rental and depreciation, and in rejecting Appellants’ third party demands against Berniard and Bell. We reverse the judgment awarding Levron damages for car rental and depreciation, and affirm in all other respects.
The accident occurred at approximately 11:00 A.M., March 16, 1970, on rural two-lane blacktopped Bayou Blue Road in La-fourche Parish. At the scene, the highway is paved to a width of about eighteen feet. On each side of the road is a fairly shallow ditch separated from the traveled portion of the highway by a narrow shoulder about two feet wide. The highway runs in an easterly-westerly direction. The road is level and straight; visibility is unimpaired for one-half mile or more. The record established that it was impossible for a vehicle to park on the shoulder completely off the traveled portion of the highway without going into the ditch. The testimony and exhibits do not afford sufficient evidence to conclude whether or not the area in question is a “residence district” as defined in LSA-R.S. 32:1(41).
Immediately preceding the accident, Ber-niard was traveling westerly along the highway. He stated that he had stopped to inquire about the location of a residence to which he had been sent to disconnect or remove a telephone. He stopped his vehicle, headed westerly, with the right wheels of the van on the slope of the ditch. As positioned, the vehicle extended about three and one-half feet into the westbound travel lane. While the testimony is in dispute concerning the length of time the van remained parked before the accident, the trial court found that the vehicle was parked a short time, perhaps not more than a minute before the collision. For reasons hereinafter shown, we concur in this finding.
Levron, traveling westerly, approached the parked van behind which a third and unidentified motorist had stopped to allow passage of an oncoming eastbound motorist. Levron stopped behind the unidentified car. When the oncoming vehicle passed, the unidentified motorist proceeded around the parked van. Levron then started forward to pass the van and was immediately struck from the rear by Dupre’s vehicle which laid down about sixty feet of skid marks prior to the point of impact.
Whether Berniard was in or out of his parked vehicle at the moment of impact is a disputed issue. The unidentified motorist did not stop after the collision. Lev- *111 ron’s testimony concerning whether Ber-niard was in or out of the van at the moment of impact is inconclusive. Berniard’s version is that when he stopped to inquire about directions to a certain residence, he pulled off the highway as far as he could. He then looked ahead and saw an oncoming eastbound automobile. He then looked in his rearview mirror, noted the overtaking unidentified motorist directly to his rear, and decided to remain in the van until traffic cleared. When he was able to get out of the van, he intended to set out a warning flag carried in the vehicle. Berniard further testified that the eastbound driver passed without incident, and just as the unidentified motorist was in the act of passing, Berniand heard a crash to the rear. He then got out of his truck, set out his warning flag and proceeded to Levron’s aid. Berniard estimated that not more than one minute elapsed between the time he stopped and the moment of impact.
Dupre concedes he did not see the parked vehicle prior to the accident, and that he did not realize Levron’s vehicle was stopped on the highway. Despite his failure to observe these salient circumstances, Dupre testified he saw Berniard standing near a house on the right side of the highway talking to someone in the yard. The trial court made no finding of fact concerning Berniard’s whereabouts. Under the circumstances, especially considering Dupre’s failure to produce the party to whom Berniard was allegedly talking, we accept Berniard’s testimony, and conclude he was still in the truck when the accident happened.
Appellants assert Berniard’s liability on Berniard’s alleged violation of LSA-R.S. 32:141 (A), and on authority of Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821; Laird v. State Farm Insurance Company, La.App., 290 So.2d 343, and Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298.
LSA-R.S. 32:141 (A) provides:
“A. Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.”
Appellants contend the trial court erred in exonerating Berniard from fault upon finding that it was impractical to park completely off the traveled portion of the road, and also because the van had been parked for not more than a minute before the accident occurred. Relying on Pierre and Laird, above, Appellants contend it matters not how long a vehicle is parked in violation of the statute because an improperly parked vehicle presents the same hazard instantly upon parking as it does minutes or hours later. Appellants also argue that since circumstances did not allow parking completely off the highway, Ber-niard should have pulled into one of the driveways in the vicinity and thus avoid creating a hazard to the traveling public.
Pierre, above, involved an accident in which an automobile was parked partially blocking the traveled portion of one lane of a two lane highway. The offending vehicle remained so parked for several hours notwithstanding the presence of no parking signs in the vicinity. A pickup truck stopped behind the parked car to await passage of an oncoming motorist proceeding in the opposing lane. Within seconds after the truck stopped, it was struck from the rear. Plaintiffs in Pierre were heirs of decedent who was a passenger in the stopped pickup truck.
*112 We understand Pierre to hold that the conduct therein concerned amounted to a violation of LSA-R.S. 32:143A(14) and LSA-R.S. 32:144B, which in effect prohibit parking in violation of legally erected no parking signs. On rehearing, the majority in Pierre specifically found the conduct violated 32:143A (14) and 32:144B, and also mentioned LSA-R.S. 32:141A, above. However, Pierre, above, did not hold that a violation of 32:141A was committed by parking of the vehicle as noted. Insofar as 32:141A is concerned, Pierre expressly noted the record did not contain sufficient evidence to classify the area as a residential or business district. Following this observation, the court in Pierre noted:
“In establishing a civil negligence rule we do not find that variance in the use and occupancy of property abutting the highway affords a reason for differentiating in the application of the provision prohibiting parking ‘in every event’ when there is not sufficient width remaining for the free passage of automobiles.
Criminal statutes are not, in and of themselves, definitive of civil liability. They are, however, guidelines to which a court may resort to establish the proper standard of care for assigning civil liability. Criminal statutes do not set forth the civil rule; it is the court which by analogy must determine whether the statutes can define the rule to be applied in civil cases.”
After concluding the illegal parking was a cause in fact of the accident, the majority, in Pierre, then considered whether the parking constituted breach of a duty imposed to protect against the particular risk involved. It was found that the parking did breach a duty of care because the acts were intended to permit free flow of traffic upon unimpeded highways and to prevent the blocking of highways which lends itself to the causation of accidents. In essence Pierre held defendant liable, not because of his violation of a criminal statute, but because of defendant’s violation of a civil duty defined by statute.
 So finding, Pierre noted that not every consequence of a negligent act requires the wrongdoer to respond in damages. Additionally, Pierre established the criteria for determining responsibility in cases involving multiple causes in fact of civil damages. Fierre states that, in such instances, the keys are: (1) A determination of the exact risk or risks anticipated by imposition of the duty breached, and (2) the legal or policy considerations which excuse liability for certain consequences of a negligent act. According to Pierre, application of these keys requires a jurisprudential determination regarding the facts, law and attendant exigencies in each case, which implement and effectuate codal provisions concerning liability for fault.
We interpret Pierre, above, to hold that violation of a criminal statute is not indispensable to a finding of civil negligence, and further that differentiations or classifications in criminal statutes may have no application in determining civil negligence and consequent tort liability.
 In this instance, we find no violation of LSA-R.S. 32:141A. Although Berniard parked his van partly blocking one lane of travel, the vehicle was so parked because it was not only impracticable but impossible to park otherwise. We likewise find there was no violation of 32:141A because, although one lane of the highway was partially obstructed, at least one and one-half lanes were left open for vehicular passage. To interpret the statute to mean that both lanes of travel must be left free would produce a result clearly not intended by LSA-R.S. 32:141 A.
Laird, above, involved an accident which occurred on a four-lane divided highway. Therein, Malbrough’s car, waiting to make a left turn at a gap in the neutral ground, was struck from the rear and came to rest in the left eastbound lane. Following the accident, Malbrough made no effort to remove his vehicle even though the shoulder of the highway was wide enough to accommodate an automobile. Neither did Mai- *113 brough attempt to warn other motorists that his vehicle was stationary upon the highway. Approximately five minutes after the first accident, a motorist drove into the rear of Malbrough’s parked vehicle when the other motorist could not veer to his right because of the presence of still another vehicle in the right eastbound lane. The court found that Malbrough violated LSA-R.S. 32:141B, which requires a motorist to warn traffic of the presence of a disabled vehicle upon a highway.
 As noted above, we find no statutory violation in the case at hand. We note, however, that the leaving of a vehicle partly blocking a highway may constitute actionable civil negligence even though such conduct does not constitute an express statutory violation. We think it obvious that each such case must be determined in the light of its own peculiar circumstances. We find that Berniard’s parking on the highway was a cause in fact of the accident, but for which the accident would not have happened. This finding, however, is not sufficient of itself to impose civil liability. Pierre, above.
Although we find no breach of 32:141A in this instance, it is apparent that LSA-R.S. 32:141 et seq., imposes upon a motorist the civil duty to protect other motorists against unreasonable risks posed by parking a vehicle in a manner which partly obstructs one lane of a two lane highway. A literal application of Pierre and Laird, in this instance, would result in what we consider the unreasonable imposition of absolute liability for partially obstructing a highway, regardless of the remaining attending circumstances. We do not believe that Pierre or any other jurisprudence dictates such an inflexible rule.
We acknowledge that, as contended by Appellants, a vehicle presents the same risk to the traveling public the instant it stops upon a public highway as it does minutes or hours later. Nevertheless, we believe that the duty involved here, namely, to protect against unreasonable risks, was not violated. In this case, we note that the accident occurred on a flat, straight highway during daylight hours on a bright clear day. Visibility of the parked vehicle was unobstructed for several hundred feet in each direction. Ber-niard, driver of the parked van, left as much of the highway clear as was physically possible, at least one and one-half lanes of a two lane highway. The highway was not congested. Berniard did not have time to exit his vehicle and set out warning signs as he intended.
On the afternoon of the accident, plaintiff consulted Dr. Allen Ellender, General Surgeon. Dr. Ellender found plaintiff to be suffering with pain in the head, neck, shoulders and lumbo-sacral area. Plaintiff’s injuries were diagnosed as cervical and lumbo-sacral strain. Plaintiff was given muscle relaxants, pain relievers and placed on bed rest. Plaintiff returned to Dr. Ellender again on March 20, 1970, and was found to be slightly improved. Because of continued complaints of pain, plaintiff was referred to a therapist. Dr. Ellender saw plaintiff on four other occasions between March 25 and May 5, 1970, on which latter date, plaintiff, though free of muscle spasm, still complained of pain. Dr. Ellender then advised plaintiff to resume work and considered plaintiff virtually fully recovered.
On March 30, 1970, plaintiff consulted Dr. George C. Battalora. Based on plaintiff’s case history and his own examination, Dr. Battalora concluded plaintiff suffered a mild cervical and lumbar strain. He was of the opinion that plaintiff should be able to resume plaintiff’s employment as welder within two to three weeks.
Dr. Arthur G. Kleinschmidt, Orthopedic Surgeon, saw plaintiff thirteen times between May 13, and October 26, 1970, and finally on January 14, 1971. During this period, plaintiff was referred for therapy, *114 including cervical traction for about two weeks. On October 6, 1970, Dr. Klein-schmidt suggested that plaintiff resume work a week later. In January, 1971, plaintiff was free of pain. From the date of the accident until January, 1971, plaintiff complained of pain in the neck, back and legs sufficient in intensity to prevent his return to work.
Appellate review of an award for damages is limited to determining whether the trier of fact (judge or jury) has abused its discretion in making the awards. Spillers v. Montgomery Ward & Co., Inc., La., 294 So.2d 803; Revon v. American Guarantee & Liability Insurance Company, La., 296 So.2d 257. Even though an appellate court may disagree with the amount awarded by judge or jury, it is not entitled to substitute its judgment for that of the trier of facts. Revon, above. In view of the nature, extent and duration of plaintiff’s injuries, we cannot say that the trier of fact has abused its much discretion in this instance.
In support of his claim for $300.00 spent for auto rental, plaintiff offered only his unsupported testimony that he rented a car from his brother whom plaintiff paid from $300.00 to $400.00 in rentals. When asked if he had a receipt for such payment, plaintiff replied in effect he had given the receipts to his attorney. The receipts were never introduced in evidence. Although cost of necessary rental of a vehicle to replace a damaged vehicle during repair is a recoverable item, Nelson v. Hawkins, La.App., 244 So.2d 656, proper proof of payment of rentals must be adduced. Nelson v. Hawkins, above; Wartell v. Hartford Insurance Company, La. App., 219 So.2d 221. Plaintiff’s unsupported statements of rentals is insufficient proof. As a matter of law, the trial court erred in granting an award for rental where the claim was unsupported by proper evidence. See Picou v. Allstate Insurance Company, La.App., 206 So.2d 99; Moreau v. Corley, La.App., 212 So.2d 566.
In support of his claim for $300.00 auto depreciation, plaintiff offered the testimony of A1 Boudreaux, Sales Manager, Porche Motors. Mr. Bou-dreaux had approximately twelve years experience in valuing used automobiles and reviewing adjuster’s estimates of repairs. Mr. Boudreaux was purposely not qualified by plaintiff Levron as an expert. Mr. Bou-dreaux never saw plaintiff’s vehicle before the accident. Porche Motors did however, repair Levron’s vehicle on the basis of an adjuster’s estimate which Boudreaux approved. Based on his experience and knowledge of automobile values, Bou-dreaux testified, over objection, that Lev-ron’s vehicle depreciated between $300.00 and $400.00, even though it was completely repaired following the accident.
In awarding these damages, the trial court erred as a matter of law. Depreciation of a fully repaired vehicle following an accident is a matter by its very nature nebulous in character, and can only be properly established by one expert in the field. Kinchen v. Hansbrough, La.App., 231 So.2d 700. Even when offered by an expert, testimony tending to prove such an element of damages must be based on conclusions supported by the record. No expert testimony was offered in this instance. Assuming Boudreaux were an expert, his opinion is not corroborated by the record. Kinchen, above, wherein such damages were allowed, is clearly distinguishable. In Kinchen, depreciation was attested by a qualified expert who had not only seen the wrecked vehicle before the accident, but had made the owner an offer for the vehicle before the accident.
The judgment of the trial court awarding plaintiff Levron damages in the sum of $2,500.00 against defendants, Dupre and Millers, for personal injuries, is affirmed; the judgment of the trial court awarding plaintiff Levron damages against defend *115 ants, Dupre and Millers, in the sum of $300.00 for auto rental and $300.00 for automobile depreciation, is reversed and set aside, and said plaintiffs demands for these items dismissed with prejudice; the judgment of the trial court dismissing the third party demands of Dupre and Millers against Berniard and Bell is affirmed; all costs of this appeal to be paid equally by Millers and Levron, jointly; all costs in the trial court to be paid by Millers.
Affirmed in part, reversed in part, and rendered.