267 So.2d 714

Marshall LAIRD et ux.

v.

**TRAVELERS INSURANCE COMPANY.**

Nos. 51727, 51744.

Oct. 4, 1972.

Concurring Opinion Oct. 5, 1972.

Rehearing Denied Nov. 6, 1972.

Holt & Woodley, Edmund E. Woodley, Lake Charles, for defendant-applicant.

Navarre & Fuselier, John P. Navarre, Oakdale, Gist, Methvin & Trimble, David A. Hughes, Alexandria, for plaintiffs-respondents.

BARHAM, Justice.

The posture of the case before us, the facts, and the legal issues presented would appear to be acceptable with unanimity to the courts below and this court. However, the method of resolution of the issues as well as the result to be obtained in that resolution has provoked disparity of view.

This controversy, arising out of an automobile accident, is between, on the one hand, Mr. and Mrs. Marshall Laird and their insurer, State Farm Mutual Automobile Insurance Company, and, on the other, Travelers Insurance Company, insurer of Red River News Company. A pickup truck owned and operated by Laird, with his wife a passenger, which he had stopped partly

on the asphalt or travelled portion of a highway, was struck from the rear by a truck-trailer owned by Red River News Company and driven by Ralph Hare, Jr., an employee of that company, in the course of Red River's business. Laird and his wife Gracie suffered personal injuries and property damage, and incurred medical expenses.

The Lairds brought a direct action against Travelers, Red River's liability insurer. Travelers answered with a general denial and pleaded Laird's contributory negligence. Alternatively, as third-party plaintiff, Travelers made Laird's liability insurer, State Farm, a third-party defendant, and reconvened against Marshall Laird. In this third-party demand and reconvention it was alleged that Laird's stopping on the highway was "proximate negligence" which made him a joint tortfeasor with Hare, as such liable, with his insurer, as solidary obligors for one-half of any amount recovered by Mrs. Laird against Travelers. Judgment was prayed for accordingly.

The trial judge found that the cause of the accident was Hare's failure to maintain a proper lookout while travelling 55 to 65 miles per hour. Damages were awarded to Marshall Laird and Gracie Laird in the sum of $30,000.00 and $10,000.00 respectively. Traveler's third-party demand was dismissed.

On Travelers' appeal the Third Circuit Court of Appeal agreed that Hare was negligent in not keeping a proper lookout, but also found Laird negligent for violating the statutory prohibition (R.S. 32:-141(A) ) against stopping on the highway when it was practicable to stop off the highway. That court additionally determined that, as between Laird and Hare, Hare had the last clear chance to avoid the collision, and that Laird was entitled to recover against Travelers, the insurer of Hare's employer. However, having found that Laird's negligence made him a joint tortfeasor with Hare, liable as such in solido with Hare for the injuries to Gracie Laird, the Court of Appeal determined that Travelers was entitled to recover from Marshall Laird and his insurer State Farm in contribution one-half of any amount awarded Gracie Laird against Travelers.

The Court of Appeal, finding the $30,-000.00 trial court award to Laird for pain, suffering, and disability to be manifestly excessive, reduced that award to $20,000.-00. It affirmed the $10,000.00 award to Gracie Laird, and gave judgment in favor of Travelers against Marshall Laird and his insurer for $5000.00, or one-half of the $10,000.00 award to Gracie Laird. See La.App., 251 So.2d 73.

We granted certiorari on the application of Marshall Laird and State Farm, and also on the application of Travelers.

As stated above, our finding of fact is in substantial accord with that of the trial court and the Court of Appeal.

Marshall Laird was driving his pickup truck west on Louisiana Highway 112 on a clear, dry day, with his wife Gracie as a passenger. The road ran through gently rolling hills, and its 20-foot travelled portion was surfaced with asphalt. Posted on the crest of a slight hill were three large, conspicuous highway signs (two on the north shoulder and one on the south shoulder) warning that men were doing road work ahead, and Highway Department employees were working in the ditches along the highway 600 to 900 feet forward from the crest and the signs.

Here Laird stopped his pickup truck as far as he could on the righthand shoulder with half of the truck occupying less than three feet of the pavement, leaving free more than seven feet of his lane and the entire 10 feet of the other lane. He stopped his motor but kept his foot on the brake pedal to activate the rear brake light.

Laird asked certain directions of his nephew, one of the workers, and N. E. Johnson, the work crew foreman, who was acquainted with Laird, also came over to his truck. While Johnson stood on the pavement at the side of the stopped truck, at least two cars passed it without difficulty, one going in each direction. About five minutes after Laird had stopped, Johnson, keeping a lookout up and down the

highway for traffic, heard and then saw the Red River News Company's van truck and trailer approaching from the east. The driver of the van truck, travelling at 55 to 65 miles per hour, appeared not to see Johnson or the Laird pickup truck, for he neither changed direction nor reduced speed. When Johnson realized this, he moved to the south shoulder of the road, shouting and waving in an attempt to draw the driver's attention to the stopped truck ahead. The driver did not react, however, until he was only a few feet from the pickup. Then he applied his brakes and turned slightly to his left, but too late to avoid colliding with the Laird vehicle.

The impact hurled the pickup 150 feet across the ditch and into the woods. The van truck and trailer were separated, the truck coming to rest in the south ditch 74 feet from the point of collision and the trailer in the woods north of the road.

Obviously Hare's attention was not on the road in front of him, as his own testimony and Johnson's make clear. Just before he came over the crest of the hill, Hare began looking in his rear view mirror to locate a companion who was following him in another Red River News Company vehicle, and his attention was thus diverted from the road ahead. His own testimony supports the conclusion that he could have avoided the collision if he had been keeping a proper lookout. There was no other traffic in the vicinity. He testi-

fied that he did not see the warning signs, the pickup truck, or Johnson hailing him. He had an unobstructed view in front, perhaps even before the crest of the hill but at least at that point. He should have seen what was directly in his path, and had ample time to stop or make a safe passing movement. His failure to do so was gross negligence from which liability flows.

The real problem presented by these facts is whether Laird was guilty of contributory negligence which continued to the moment of the impact so that he cannot recover for his injuries and damage. Moreover, the contention is raised that Laird was negligent, a joint tortfeasor with Hare, responsible as a solidary obligor for one-half of the damage incurred by Gracie Laird, his wife, the guest passenger.

Under the facts presented it is obvious that Laird may be called criminally negligent or at least liable to criminal sanctions to the extent that he was in violation of R.S. 32:141(A), which provides:

"Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway."

■ Laird's "criminal negligence" consisted of his violation of the first part of this provision by stopping on the travelled portion of the highway when it was "practicable to stop * * * off such part of said highway", for there was within 40 feet of his stopping place a side road where he could have parked completely off the highway. However, as we said in Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1971), "Criminal statutes are not, in and of themselves, definitive of civil liability" and do not set the rule for civil liability; but they may be guidelines for the court in fixing civil liability. Thayer, Public Wrong and Private Action, 27 Harv.L.Rev. 317 (1913); Malone, Contrasting Images of Torts— The Judicial Personality of Justice Traynor, 13 Stanford L.Rev. 779; Malone, Ruminations on Dixie Drive It Yourself Versus American Beverage Company, 30 La.L.Rev. 363; Morris, The Relation of Criminal Statutes to Tort Liability, 46 Harv.L.Rev. 453; Morris, The Role of Criminal Statutes in Negligence Actions, 49 Col.L.Rev. 21; James, Statutory Standards and Negligence in Accident Cases, 11 La.L.Rev. 95, 103–124; Prosser, Torts (4th ed. H.B.), § 36, p. 190. In criminal prosecutions no harm need result from the act which violates the statute for the actor to

be subject to criminal sanctions. Moreover, violation of a criminal statute in combination with some resultant harm does not, in and of itself, impose civil liability. We must determine whether the prohibition in the statute is designed to protect from the harm or damage which ensues from its violation. Lopes v. Sahuque, 114 La. 1004, 38 So. 810 (1905); Picou v. J. B. Luke's Sons, 204 La. 881, 16 So.2d 466 (1943); Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646 (1962); Lee v. Carwile, 168 So.2d 469 (La. App. 3rd Cir. 1964) (cf. Alexander v. Standard Oil Co. of Louisiana, 140 La. 54, 72 So. 806 (1916) ); 26 La.L.Rev. 518.

■ We have repeatedly held that a criminal violation would lead to civil responsibility only if that act is the *legal* cause of damage to another. To decide whether the violation of the criminal statute by Laird imposes civil liability upon him and denies him civil redress from one admittedly negligent, we must determine whether his act was a cause-in-fact of the accident, what was the nature of the duty imposed upon him, what risks were encompassed within that duty, and whether under the combination of these considerations he should be declared negligent.

■ Every act leading up to an accident cannot be said to be a cause-in-fact. However, when those antecedent acts bring the court, after careful scrutiny of all the facts and circumstances, to a conclusion that more probably than not they were necessary ingredients of the accident, they constitute cause-in-fact. In resolving this question we make no inquiry as to whether the act was unlawful or negligent. We determine only whether it was a substantial factor without which the accident would not have occurred—that is, whether it had some direct relationship to the accident.

■ Laird stopped his truck so that it encroached upon the lane of travel ordinarily occupied by moving vehicles like the truck which struck it. If his pickup had not been stopped in this position on the highway, the accident could not have occurred. Therefore it is not difficult to conclude that the stopping of his truck partly on the travelled portion of the highway was a cause-in-fact of the collision.

We must next consider what, if any, duty was imposed upon Laird when he stopped his vehicle upon the highway in violation of the statute and in the particular manner in which he did, and what risks were within the ambit of that duty. In order to make these determinations we scrutinize the criminal statute to find the protection which that law was intended to afford. We have said of this particular statute that it is a highway safety measure designed to keep open the traffic arteries. It recognizes the danger inherent when motor vehicles are parked or stopped upon the travelled portion of the highway. When such a stopped vehicle fully occupies

a lane of traffic, not only is passage impaired or blocked but a following driver finds it difficult to ascertain quickly whether such a vehicle is moving or motionless. When a vehicle not moving occupies any portion of the highway, it reduces the opportunity for traffic to pass safely at that point. It makes safe passage impossible when there is oncoming traffic and insufficient room for the passing movement. We have held as a matter of court policy that this statute is designed to protect against the risk that a driver, whether cautious or inattentive, would collide with a stationary vehicle. Pierre v. Allstate Ins. Co., supra. For application of the same policy to a similar highway regulatory statute, see Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).

The precise questions here are whether Laird owed a duty to the driver of the truck which struck him from the rear; whether, under all the circumstances of the case and our determination of the purpose of that duty, the risk which the driver of the other truck caused through his actions was contemplated by or embraced within that standard.

The facts and circumstances of this case are not analogous to, and may be differentiated from, those of Dixie Drive It Yourself System v. American Beverage Co., supra, and Pierre v. Allstate Ins. Co., supra. The facts in this case are analogous, except for slight differences of time, place, and such incidentals, to those of Rowe v. Travelers Insurance Co., 253 La. 659, 219 So.2d 486 (1969). This court's approach in Rowe under "proximate cause" was different from that used in Dixie, Pierre, and the present case. The result in Rowe, however, would have been the same under the approach of these cases, which we think expresses more clearly, simply, and logically the rationale of the result. This court said in Dixie: " * * * This [case reconciliation] is rendered difficult by the ambiguity of the language of proximate cause. As employed by courts, proximate cause is a legal concept without fixed content. It is used indiscriminately to refer to cause-in-fact, the scope of liability, and other negligence factors." See Malone, Ruminations on Dixie Drive It Yourself Versus American Beverage Company, supra; Green, Duties, Risks, Causation Doctrines, 41 Tex.L.Rev. 42; Cole, Windfall and Probability: A Study of "Cause" in Negligence Law, 52 Cal.L.Rev. 459.

Laird owed a duty to many motorists who might have passed his way to the extent of responding in civil damages if his act had given rise to the damage. Nevertheless, the risk of the occurrence brought about in combination with the act of the driver of the truck which collided with his stopped vehicle did not fall within the ambit of that duty. These are the

pertinent facts from which we make this conclusion:

There was no approaching or closely following traffic which impeded passage on the highway partially occupied by Laird's stopped vehicle. His vehicle occupied at most two and three-fourths feet of the 20-foot paved travelled portion of the highway. Hare's truck was less than seven feet wide and could have passed Laird's pickup without moving out of the lane of travel assigned to it. Moreover, because there was no other traffic it had an additional 10 feet, or in all more than 17 feet, of clear highway upon which to travel. While it is difficult for other traffic to determine whether a vehicle using all or nearly all of a travelled lane is moving or stopped, the presence of a vehicle as far off the highway as was the Laird truck indicates that it is a non-moving, or at least a slow-moving, vehicle, and is as obvious a warning to other traffic as a red flag. In addition, Laird kept his brake lights on while he was stopped. This would certify to traffic to the rear that there is a stopped vehicle ahead, and indeed is a warning device created for that very purpose. Laird's vehicle on the highway was visible for at least two-tenths of a mile, and perhaps more, from the crest of the hill behind the vehicle, or even before the hill. The more than adequate road signs, warning that there was highway construction or repair work in this area, should have alerted every driver that part of the highway ahead might be blocked so as to require the stopping of his vehicle or at least the maneuvering of it into another traffic lane.

Finally, as in Rowe, a person standing by the stopped vehicle recognized the impending danger from the vehicle which bore down from the rear and tried to warn the oncoming driver by shouting and waving. The very slightest correction in direction at a very late point in time by the driver Hare, who was totally oblivious of the highway ahead, would have avoided the consequences which bring this case before us. His attention had been kept on the rear view mirror for some distance and some time. Under *other* circumstances, and to other drivers under *those* circumstances, Laird owed the duty not to stop on such a portion of this highway as he occupied, and he would or should have known that some risks were imposed upon those who acted in such a manner which would result in civil liability if the act caused damage. However, the duty imposed, when we consider the purpose of the criminal statute, did not encompass the particular risk here encountered.[1]

---

1. Foreseeability, which is a nebulous concept, has purposely not been discussed for it is unnecessary, although it would support the conclusion reached. While foreseeability may be relevant in assigning risk, there are other and often more important factors. I paraphrase Green, Duties, Risks, Causation Doctrines, 41

It is at this point that we then determine, by analogy with that statutory purpose, that under the facts and circumstances of this case Laird could not be considered negligent so that he must respond in civil damages, or contributorily negligent so that he is barred from recovering civil damages. Laird's stopping of his truck so that it encroached slightly upon the travelled portion of the highway in this area of warning of highway construction or repairs under the totality of the circumstances was a technical violation of the criminal statute. However, this conduct is excusable for civil liability and has no oper-

ative effect upon recovery of damages. See Malone, Ruminations on Dixie Drive It Yourself System Versus American Beverage Company, supra, at 384–385. Although Laird could have been civilly negligent under other circumstances, he is not negligent here because there was no breach of a duty on his part which gave rise to the harm occasioned.

■ Actually neither the combination fact-law question of *negligence* nor any attendant policy consideration which might deny liability on that basis is reached.[2] The resolution of the duty-risk element of

Tex.L.Rev. 42, 58: The fact of risk in the particular case is what actually took place as a result of defendant's conduct, not necessarily what was foreseen by the actor as likely to take place. Moreover, the concept of foreseeability would be more applicable to a case involving the alleged negligence of a single actor rather than that of joint or several tortfeasors. See Hill v. Lundin, 260 La. 542, 256 So.2d 620 (1972); Green, Foreseeability in Negligence Law, 61 Col.L.Rev. 1401. See Norton v. Argonaut Insurance Company, 144 So.2d 249 (La.App. 1st Cir. 1962), which states that the Dixie case departs to some extent from foreseeability as the test for determining whether an intervening cause will relieve a defendant of liability. See also Robertson, Intervening Negligence—Proximate Cause, 23 La.L.Rev. 281; Prosser, Torts (4th ed. H.B.), § 43, p. 250, § 44, p. 270. A discussion of intervening cause, even culpable intervening cause, has been deliberately omitted in this case although there is some authority for *culpable intervention* as establishing a *superseding cause* which relieves the first negligent actor. 2 Restatement of Torts 2d, §§

440–447; Eldredge, Culpable Intervention as Superseding Cause, 86 U. of Pa. L.Rev. 121. The same result would be had here under the application of the approach used under that doctrine. A great majority of the doctrinal writers in the field of torts have rejected intervening and superseding cause, as did this court in Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298.

2. In common law jurisdictions this would present a crucial decision by the judge in many cases of whether to direct a verdict and take the case away from the jury. The only previous possible jury question—cause-in-fact—was answered affirmatively, but such an answer is of no consequence when the law-judge questions of duty-risk are negative. The last answer concludes that there was not the necessary legal basis—a duty-risk relationship —to support the claim. See Green, The Causal Relation Issue in Negligence Law, 60 Mich.L.Rev. 543; Malone, Ruminations on Cause-in-Fact, 9 Stanford L.Rev. 60; Prosser, Torts (4th ed. H.B.), § 45, p. 289.

tort liability adversely to the claimant pretermits an inquiry into *ultimate negligence or fault*, for liability cannot be imposed for negligent acts in the absence of that relationship. However, sometimes the question of whether the harm results from a risk embraced within a legal duty is such a close question of law that reason and policy determinations are brought into play.[3] In Dixie after setting forth the policy criteria the court said: *"Law* and *reason* support a conclusion that the defendants should not be relieved of liability."* (Emphasis supplied.) We said in Pierre: "* * * The keys for the solution of the issue of responsibility when there is more than one cause-in-fact of damages are (1) a determination of the exact risk or risks anticipated by imposition of the legal duty which has been breached and (2) the legal or policy considerations which grant excuses from certain consequences which follow an act of negligence. This requires, under the facts and the law of each case and the attendant exigencies, a jurisprudential determination which will implement and make effective our broad codal provisions concerning those who should respond in damages for their faults."

3. In some cases the duty-risk relationship and questions of policy in assignment of negligence are somewhat blended because of the circumstances. See Dixie Drive It Yourself System v. American Beverage Co., supra; Hill v. Lundin, supra. See

Here we make a legal conclusion under a consideration of all the facts, a conclusion supported by reason and policy considerations, that Laird breached no duty to the driver of the other vehicle or to the guest passenger in his own truck. There was no breach of duty, for the law does not place the particular risk of harm encountered within a legal duty.

The evidence supports the Court of Appeal's reduction of the award to Marshall Laird from $30,000.00 to $20,000.00.

The judgment of the Court of Appeal in favor of Travelers Insurance Company and against Marshall Laird and State Farm Mutual Automobile Insurance Company is reversed, and there is judgment in favor of Marshall Laird and State Farm Mutual Automobile Insurance Company dismissing Travelers Insurance Company's third-party demand and reconvention. The judgment against Travelers Insurance Company in favor of Marshall Laird for $20,000.00 and the judgment in favor of Mrs. Gracie Laird against Travelers Insurance Company for $10,000.00 are affirmed. All costs in all courts are cast against Travelers Insurance Company.

SUMMERS, J., concurs in result only and assigns reasons.

Green, Foreseeability in Negligence Law, supra, at 1417; Morris, The Relation of Criminal Statutes to Tort Liability, 46 Harv.L.Rev. 453; Green, Judge and Jury (1930).

McCALEB, C. J., and HAMLIN, J., concur being in agreement with the concurring opinion of SUMMERS, J.

DIXON, J., dissents with written reasons.

SUMMERS, Justice (concurring).

Although I arrive at the same result, I do not agree with some of the findings or the reasons assigned for the legal conclusion expressed. In my view the law and facts are as follows:

On November 22, 1968 Marshall Laird and his wife, Gracie, were traveling in their 1968 Dodge pickup truck in a westerly direction on Louisiana Highway 112 about 10.3 miles east of DeRidder. He was driving, and when they reached a point where highway employees were constructing baffles in the roadside ditch, he pulled over to his right, or the north side of the highway, and stopped. He stopped to talk with, and seek information from, Noah Laird, his nephew, who was one of the workmen.

While talking to Noah, and N. E. Johnson, the highway gang foreman, Laird's truck was struck from the rear by a van truck and trailer driven by Ralph Hare, Jr., an employee of Red River News Company. At the time Hare was delivering papers and magazines in the course and scope of his employment. As a result of the collision, Laird and his wife suffered personal injuries and incurred medical expense. The truck was extensively damaged.

A direct action was brought by Laird and his wife against The Travelers Insurance Company, the liability insurer of Red River News Company. Travelers answered with a general denial and pled Laird's contributory negligence. Alternatively, as third party plaintiff, Travelers made Marshall Laird and his liability insurer State Farm Mutual Automobile Insurance Company third-party defendants In this third-party demand, Laird's action in stopping on the highway was alleged to be "proximate negligence" making him a joint tort-feasor with Ralph Hare, Jr., liable as such, in solido with his insurer State Farm, for one-half of any recovery obtained by Gracie Laird against Travelers. Judgment was prayed for accordingly.

Travelers also intervened as subrogee to recover $1,100 paid to Red River News Company as collision insurer of the van truck. The intervention was dismissed, presumably because of an intercompany arbitration agreement between Travelers and State Farm advanced in an exception to this demand.

The trial judge was of the opinion that the cause of the accident was Hare's failure to maintain a proper lookout and see what he should have seen while traveling at 55 to 60 miles per hour, noting that he

could easily have seen and avoided the stopped Laird vehicle. Damages were awarded to Marshall Laird and Gracie Laird for personal injuries and medical expense, in the sum of $30,000 and $10,000, respectively. Travelers' third-party demand was dismissed.

On Travelers' appeal to the Third Circuit, that court found Laird guilty of negligence for violating the statutory prohibition against stopping on the highway, when it was practicable to stop off of the highway. La.R.S. 32:141(A). Hare was also found to be negligent in not maintaining a proper lookout.

In addition, the Court of Appeal was of the opinion that as between Laird and Hare, Hare had the last clear chance to avoid the collision. Thus, in the opinion of the Court of Appeal, Laird was entitled to recover against Travelers, the insurer of Hare's employer. However, Laird's negligence was found to make him a joint tort-feasor with Hare, liable as such in solido with Hare for the injuries to Gracie Laird. Travelers was therefore entitled to recover from Marshall Laird, in contribution, one-half of any amounts recovered by Gracie Laird from Travelers.

Finding the $30,000 trial court award to Marshall Laird for pain, suffering and disability to be manifestly excessive, the award was reduced by the Court of Appeal to $20,000. The $10,000 award to Gracie Laird was affirmed. Judgment was

awarded in favor of Travelers for $5,000 against Marshall Laird and his insurer for one-half of the $10,000 award in favor of Gracie Laird. 251 So.2d 73.

Certiorari was granted upon the application of Marshall Laird and State Farm. 259 La. 873, 253 So.2d 212. Travelers also applied for and was granted certiorari. 259 La. 873, 253 So.2d 213.

My understanding of the facts are substantially in accord with the trial court and Court of Appeal.

It was about 11 a. m. on November 22, 1968. Marshall Laird was driving his Dodge pickup truck in a westerly direction on La. Highway 112. His wife, Gracie, was a passenger in the truck with him. The day was clear and the road surface was dry.

Twenty feet of the road, the traveled portion, was surfaced with asphalt. At the site of the collision the road ran through rolling hills, "like a roller coaster." When Laird reached a point about ten miles east of DeRidder, he saw three large highway warning signs, two along the north shoulder of the road, or to his right, about 40 or 50 feet apart; and one on the south shoulder, to his left, opposite the first sign on the right. These signs were about four feet high and three feet wide. They read: "MEN WORKING", "ROAD WORK AHEAD". Each had a red flag flying from its top.

The signs were posted at the crest of a a slight hill. At least 600 feet (the trial judge found the distance to be 900 feet) west of the crest of this hill, Highway Department employees were at work in the ditches alongside the highway. Here Laird stopped his pickup truck, parking as far as he could on the right-hand side. Because of a narrow shoulder, however, half of the truck remained on the asphalt or traveled portion of the road.

Although the truck motor was stopped, Laird retained his foot on the brake pedal to activate the rear brake light. He then engaged in conversation with his nephew, Noah, asking directions to Elmer Perkins' house, Noah having told him some time before he could pick up a hound dog pup there.

N. E. Johnson, the work crew foreman with whom Laird was acquainted, came over from the ditch south of the road to shake hands and chat. As Johnson stood at the side of the truck at least two cars went by—one going in each direction, both without incident. Then, as he talked, glancing up and down the highway keeping a lookout for traffic, Johnson heard the Red River News Company van truck and trailer approaching from the east. The van truck was traveling at 55 to 60 miles per hour and the driver appeared not to observe Johnson or the Laird pickup truck, for he neither changed directions nor altered speed.

When Johnson realized that the van truck driver was inattentive, he moved back to the south shoulder of the road, at the same time hollering and waving his hands in a vain attempt to attract the driver's attention and divert him from the northern or westbound lane and a collision with the Laird pickup. The driver did not react, however, until a few feet before the impact, when he applied his brakes and turned slightly to his left, too late to avoid a violent collision with the pickup.

The impact precipitated the pickup truck a distance of 150 feet across the ditch and into the woods. The van truck and trailer were separated—the truck coming to rest in the south ditch 74 feet from the point of collision, the trailer in the woods north of the road.

Although the length of time Laird was stopped varied according to the witnesses who made estimates, we are satisfied he was there for approximately five minutes. There was ample space in the south, or eastbound lane, and the unoccupied portion of the north, or westbound lane, to permit Hare to maneuver around the pickup truck safely and with ease.

Whether Hare could see the pickup truck before he came over the crest of the hill is not made clear. Since the hill was not a steep one, it is reasonable to infer that he could have seen the pickup even before he reached the crest. However, this is unimportant, for there was ample distance

between the crest of the hill and the stopped pickup to enable Hare to see it as he reached the crest of the hill in sufficient time to either stop or go around the pickup. And since no traffic approached from the opposite direction at the time, going around the pickup presented no problem, two vehicles having previously negotiated the maneuver without incident.

The fact is that Hare was inattentive to the road ahead as his own testimony and Johnson's testimony make clear. Just prior to and as he came over the crest of the hill, Hare became concerned about a companion who was following him at a distance in another Red River News Company vehicle. Hare was looking for this vehicle in the rear view mirror of his truck and his attention to the road ahead was diverted thereby. His own testimony supports the conclusion that he could have avoided the collision if he had not been looking back. He testified that he did not see the warning signs, the pickup truck or Johnson hailing him. His view ahead was unobstructed and he should have seen what was obvious, clear and directly in his path. To fail to do so was gross negligence.

The real problem these facts present concerns the charge that Laird was guilty of contributory negligence which continued to the moment of the impact, and, therefore, he cannot recover for his injuries and damage. Moreover, the contention is made that Laird's negligence makes him a joint

tort-feasor with Hare, responsible as a solidary obligor for one-half of the damage incurred by Gracie Laird, the guest passenger.

Laird was negligent for violating the rules of the road as set forth in Section 141 (A) of Title 32 of the Revised Statutes which provides:

> Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred feet in each direction upon such highway.

Laird's violation consisted of stopping on the traveled portion of the highway when a nearby graveled side road, forty feet away, with no traffic, could have provided a safe stopping place. It was therefore "practicable to stop . . . off such (traveled) part of said highway. . . ."

This statute, as we have held, was designed to protect life and property on the highways. It is a safety measure. The violation of its provisions is negligence *per se,* and this negligence is actionable if it is a legal cause of the collision. Dixie Drive

It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). At the same time, we recognized in the Dixie Case that there is no universal formula for determining legal cause.

Laird's action was in fact a cause of the collision, in that his truck was struck from the rear because it was parked in the path of Hare's truck on the traveled portion of the highway in violation of the rules of the road. But for this fact, it may be said, the collision would not have occurred. Nevertheless, Laird's negligence was not for that reason a legal cause of the collision in the sense that he should answer for the resulting injuries and damage. This is so for several reasons.

In the first place, his negligence was passive, too far removed in point of time from the events leading directly to the collision. Five minutes elapsed from the time when he stopped until the collision occurred. Secondly, although negligent *per se* for having violated the rules of the road by stopping on the traveled portion of the highway when it was practicable to stop on the side road, this *per se* negligence is in this case a technical status which did not bring about a result the statute was designed to protect against. The statute was designed to prevent blocking traffic in such a manner that it could reasonably be expected or foreseen that an accident would result. But this reasonable expectation did not exist here because the road was not blocked in such a manner that traffic was obstructed. At least fifteen feet of clearance on the traveled portion of the highway remained. This was more than sufficient to permit any reasonable driver to go around Laird's pickup truck without incident, the view was unimpaired and no other vehicles were approaching to create a maneuver problem.

Violation of the quoted statute by the stopped motorist under these circumstances is not a legal cause of the collision, when the collision occurs as a result of gross inattention to the road by the approaching motorist—that is, when the collision results from rash actions no reasonable person could be expected to foresee. Here Hare declared that he did not see the Laird truck until the moment of impact, did not see Johnson waving and hollering to attract his attention and did not see the warning signs placed at a sufficient distance to enable him to stop or take necessary precautions to go around Laird's truck. Such gross disregard of the duty to keep a proper lookout can neither be anticipated nor guarded against.

In such cases the technical violation of the statute prohibiting stopping on the highway becomes a passive cause, too remote in point of time or sequence of events to remain legally viable. Instead, the subsequent negligent conduct, which intervenes between the original negligent act and the resulting wrong, is more proximately re-

lated to the injury. This later negligence then puts in motion a new chain of events, and becomes the independent and primary cause of the injury flowing directly therefrom, making the actor chargeable with all legal responsibility for the consequences.

Applying these principles to the facts of this case, Laird's conduct is not a legal cause of the collision and the damage resulting therefrom. Nor did his negligence contribute in legal contemplation to the collision and damage. Instead, Hare's speed, inattention and failure to keep a proper lookout were the immediate and primary cause of the collision. Thus, Travelers must respond in damages to Marshall Laird and his wife Gracie. Travelers' third-party claim against Marshall Laird for contribution is also without merit.

DIXON, Justice (dissenting).

I respectfully dissent.

The majority opinion finds Laird negligent (guilty of "criminal negligence") and his negligence to be a "cause-in-fact" of the accident, but excuses him from civil liability because he owed no duty to Hare, the following motorist. Why? Is it because Hare was more negligent than Laird? The majority only says that "under the circumstances" Laird did not owe Hare a duty to clear the highway, explaining that, although Hare was a member of the class (following motorists) to whom Laird owed the duty of clearing the highway, Laird did not, at this time and at this place, owe a duty to Hare!

What about the duty Laird owed his passenger? The following motorist and Laird's passenger are not in the same situation. The majority does not discuss the duty the driver owes his passenger to avoid placing the passenger in a position of unnecessary peril. The majority finds that Laird placed his truck in a dangerous position, violating the statute which prohibits parking on the highway and which was designed, according to the majority, "to protect against the risk that a driver, whether cautious or inattentive, would collide with a stationary vehicle."

Some explanation is needed for the evaporation of the duty which Laird owed to his passenger. The majority relieves Laird of all responsibility for her injury.

I agree that, as between Laird and Hare, Laird should recover. For the purposes of workability in solving tort cases, the opinion of the Court of Appeal (251 So.2d 73) in this case is preferable: Hare had the last clear chance; he is responsible.

But as between Laird and Mrs. Laird, it required the concurring negligence of Laird and Hare to cause her injury. Laird put his passenger in a place of danger, specifically prohibited by law, and his act, concurring with Hare's negligence, caused the injury. Laird's insurer should bear a portion of the responsibility for Mrs. Laird's injury.