STOKER, Judge.
Steven J. Meaux, a probationary fireman in Lake Charles, was hit by a car driven by Pamela K. Humphrey. Meaux’s unit had stopped to render assistance to two deputy sheriffs who were extinguishing a fire in a stalled pickup truck. Meaux sued Ideal Mutual Insurance Company (Ideal), insurer of the Sheriffs Department, for damages allegedly caused by the negligence of the two deputies. He later amended his claim to add the deputies, Charles Boudreaux and Warren Broussard, Sheriff Wayne McElveen, Pamela K. Humphrey, and Hartford Insurance Company, the Fire Department’s uninsured motorist insurer. Ideal filed a third party demand against Pamela Humphrey, Wilma Williams, the owner of the car Ms. Humphrey was driving, and Larry Dobson, the owner of the stalled pickup. MeElveen, Boudreaux and Broussard filed third party demands against Ms. Humphrey, Ms. Williams, Dobson and the City of Lake Charles. Fireman’s Fund Insurance Company (Fireman’s) intervened to collect compensation and medical payments made to Meaux as the worker’s compensation insurer of the Fire Department. The City of Lake Charles was dismissed on an exception of no cause of action.
All claims against Pamela Humphrey and Wilma Williams were severed, and are not before us.
This was a bifurcated trial. The third party demands against Larry Dobson were tried before a jury, which apportioned the fault on a percentage basis of 0% to the deputies, 10% to Larry Dobson, and 90% to Steven Meaux and Pamela Humphrey. The main demand and the intervention were tried before the judge alone. Three days after the jury’s verdict, the trial judge rendered an opinion in the main demand exonerating the deputies and dismissing all claims against them. The intervention by Fireman’s was also dismissed. Meaux, Fireman’s and Larry Dobson appeal.
FACTS
Larry Dobson’s pickup truck stalled in the right-hand eastbound lane of Broad Street in Lake Charles in the evening of June 17, 1982. He flagged down two sheriff’s deputies, Charles Boudreaux and Warren Broussard, who parked their car behind the pickup. Boudreaux placed himself to the west of the two vehicles and proceeded to direct traffic into the left-hand east *1001 bound lane to avoid the obstruction. Traffic was steady, but not heavy.
The pickup’s battery was dead, so Brous-sard drove the patrol car in front of the pickup and turned it around to face the truck to attempt a jump start. When Dob-son tried to start the truck, the carburetor caught fire. Broussard extinguished the fire with a rag.
Fireman Brian Ackley was driving a group of probationary firemen, including Steven Meaux, to a training course when he spotted the smoking vehicle. He stopped to offer assistance. Eventually, the fire engine he was driving was positioned east of the patrol car. From that point on, the order of the vehicles from west to east was the stalled pickup, the patrol car facing west, and the fire engine.
The fire no longer posed a threat, but the firemen remained while Dobson went to a nearby phone to summon help. Broussard and Boudreaux stood behind the pickup and directed traffic out of the right-hand lane with their hands. They had no reflective equipment. Steven Meaux, along with his chief and other fireman, stood just inside the right lane facing the pickup truck.
The traffic was well controlled until Pamela Humphrey failed to move the Buick she was driving completely into the left-hand lane. The deputies were forced to jump out of the way as she straddled the line between the two eastbound lanes. She hit Steven Meaux, who rolled over the top of the car and landed on the ground approximately at the point of the impact. Meaux suffered a badly broken leg, among other injuries, and developed psychological problems, allegedly because he was no longer able to qualify as a fireman.
Several factual issues were contested at trial. Meaux introduced Surface Weather Observations of the National Climatic Data Center to show that the accident occurred at sundown, while the defendants testified that there was still enough daylight so that vision was not impaired. There was evidence to show that Pamela Humphrey was intoxicated and speeding at the time of the accident. The time elapsed between the arrival of the deputies and the occurrence of the accident was less than 20 minutes.
ASSIGNMENTS OF ERROR
Steven Meaux assigns three errors: (1) the lower court erred in applying a proximate cause analysis instead of duty-risk; (2) the court held the deputies to a general standard of care, instead of a special higher duty they owed as law enforcement officers; and (3) the court erred in finding no negligence on the part of the deputies. Fireman’s argues that the court was manifestly in error in not finding the deputies negligent. Dobson contests the verdict of the jury attributing 10% of the fault to him, claiming his actions were only a remote cause of the accident.
LIABILITY OF THE DEPUTIES
The trial court phrased its analysis in the following terms:
“The first question to be answered by this court is whether there was actionable negligence on the part of the two Sheriff’s deputies. Were they guilty of negligence which was the proximate cause of the injuries sustained by Steven Meaux? ... What we need to determine is whether, given the circumstances presented, the officers acted in a reasonable manner.”
He then concluded:
“This court does not find that the two Sheriff’s deputies acted in an unreasonable or negligent manner in their handling of this situation. Nor does the court find any negligence on their part which constitutes a proximate cause of this accident.”
Meaux argues that the trial judge used the wrong methodology, that is, he used a proximate cause rather than a duty-risk approach. Since the adoption of duty-risk by the Supreme Court in Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), that method has become the preferred analysis in negligence cases. However, we find no case which forbids the use of proximate *1002 cause. In fact, it has been observed that “while the district courts may preach duty-risk analysis, they more often than not practice proximate cause_” McNamara, The Duties & Risks of the Duty-Risk Analysis, 44 La.L.Rev. 1227, 1252 (1984). While duty-risk has been said to express “more clearly, simply, and logically the rationale of the result,” Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714, 718 (La.1972), when the result is the same under either method, we cannot say the trial court erred in using the language of proximate cause. Even applying a duty-risk analysis to the case before us, we find no liability on the part of Bou-dreaux and Broussard to Steven Meaux.
The first inquiry in a duty-risk analysis is whether the actions of a defendant were a cause in fact of the plaintiffs injuries. Dixie Drive It Yourself, supra. Cause in fact is a broader concept than proximate cause; every consequence has innumerable causes. Malone, Ruminations on Dixie Drive It Yourself Versus American Beverage Company, 30 La.L. Rev. 363 (1970). However, only those causes which are legal causes are actionable. A legal cause is one in which a substantial relation exists between the defendant’s actions and the harm which occurs. Sinitiere v. Lavergne, 391 So.2d 821 (1980); Dixie Drive It Yourself, supra. We are not fully convinced that the actions of Boudreaux and Broussard were a legal cause of this accident. Their efforts at traffic control were successful until Pamela Humphrey disobeyed their signals. Ms. Humphrey never moved completely into the left-hand lane, even after she was parallel to the string of vehicles occupying the right-hand lane. Meaux states in his brief that a cause in fact of the accident was the failure of the deputies to place their patrol car behind the stalled truck, to serve as both a shield and a warning. We are not certain that this action would have prevented Ms. Humphrey from continuing in the right-hand lane in which Meaux was standing. She failed to alter her course even after she must have realized an obstruction existed.
Even if we termed the deputies’ actions a cause in fact of the accident, inquiries into the duty they owed and the potential breach of that duty lead us to the same conclusion reached by the trial judge. Meaux argues that the judge erred in not holding these defendants to the higher standard of care owed by law enforcement officers, but instead applying a reasonableness standard. This contention confuses the separate concepts of standard of care and duty. As explained by Professor Wex Malone in the law review article cited above at pages 387-388:
“The body of law we call negligence can appropriately be regarded as a mass of particularized duties which share a common characteristic called ‘reasonable behavior.’ Although we tend to muse upon negligence as though it enjoys an independent ideational existence of its own, yet in truth negligence represents only an aggregate of very specific exac-tions devised by courts to control particular items of human conduct. In actual controversies no one is negligent in the abstract. Instead, a defendant is chargeable with negligence in that he failed to maintain a reasonable diligent watchout, or he failed to maintain a reasonable speed, or he failed to give an appropriate signal upon turning his vehicle, and so on.”
In other words, the duty owed varies from person to person, but each person must carry out that individual duty in a reasonable manner. Thus, the trial judge did not err when he inquired into the reasonableness of the actions of the deputies.
We are not convinced that the deputies breached their duty to secure the scene of the stalled pickup. Upon arrival at the scene, one of the deputies began directing traffic around the stalled vehicle. Those witnesses who were at the site testified that the lighting was sufficient for unimpaired vision. As the timing of the events was set by estimate, the Surface Weather Observations on file at the National Climatic Data Center, recording the exact time of *1003 sunset, are inconclusive in establishing lighting conditions when the deputies took charge of the scene. While “unwritten protocol,” to borrow the language of Meaux’s counsel, may have suggested other procedures, it appeared that a simple jump-start would remedy the situation, without the need for additional assistance. That effort failed, and attention turned to extinguishing the fire that erupted. Only about ten minutes elapsed between the effort to start the truck and the accident. The fire truck arrived during this time. There was testimony to show that whether the pickup’s hood was raised or lowered, the fire truck’s lights were visible over the pickup. The deputies were on the scene less than twenty minutes before the accident. We agree with the trial judge that their handling of the situation was neither unreasonable nor negligent. Therefore, we affirm the part of the judgment dismissing the actions against Boudreaux, Broussard and McElveen.
LIABILITY OF LARRY DOBSON
Larry Dobson, the owner of the pickup truck, has appealed the jury verdict holding him 10% liable for the accident. Dobson was not sued by Meaux; he was brought into the suit by the third party demands of Ideal, Sheriff McElveen and the two deputies. Therefore, when the defendants in the principal action were dismissed, the claims against Dobson likewise fell. Dobson’s appeal seeks to guard against the liability he would have been exposed to if we had found fault on the part of the defendants named by Meaux. As we have affirmed the trial court’s dismissal of Meaux’s claims, we agree with the disposition of the third party demands against Dobson. Even if the deputies had been held liable for the accident, we would have dismissed their claims against Dob-son, as we disagree with the jury’s finding that he was 10% responsible.
The stalling of the pickup was undoubtedly a cause in fact of the accident. If the truck had not stopped, the chain of events leading to Meaux’s injury would not have occurred. However, we cannot conceive of any duty breached by Dobson which would render him liable. Within minutes, he flagged down the deputies, and gave control of the situation to them. He assisted them in their efforts to start the vehicle. When those failed he was sent across the street to call for a wrecker. He was not even present when the accident occurred. We believe his actions were reasonable under the circumstances.
CONCLUSION
We affirm the trial court’s judgment rejecting the claims against Boudreaux, Broussard, McElveen and Ideal Mutual Insurance Company. We also affirm the dismissal of the third party demands against Larry Dobson. Costs of this appeal are to be assessed to plaintiff, Steven Meaux.
AFFIRMED.