647 So.2d 1265 (1994)
Edmond WOOD
v.
Milton MAY, State Farm Automobile Insurance Company and Farmers Insurance Company.
No. 94-CA-0756.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
*1266 Claude D. Vasser, C. David Vasser, Jr., Vasser & Vasser, New Orleans, for appellant.
William E. Mura, Jr., New Orleans, for appellees.
Before BYRNES, WARD and JONES, JJ.
BYRNES, Judge.
This case arises out of an automobile accident which occurred on Airline Highway in Orleans Parish on Wednesday, September 12, 1990, at approximately 9:15 a.m.[1] The plaintiff-appellee, Edmond Wood, was reading a newspaper and sitting in his automobile located in the left-hand lane of the highway with his engine off, when he was rear-ended by the defendant Milton May. Although Mr. May's vehicle was not disabled, he had left it stationary on Airline Highway while waiting for over an hour for the police to arrive to investigate a minor rear-end collision which had occurred when he ran into the vehicle in front of him. Mr. Wood sued Mr. May, State Farm Automobile Insurance Company and Farmers Insurance Company for the damages he sustained as a result of the second accident. Farmers Insurance Company appeals the judgment rendered against it. We affirm in part and reverse in part.
It was stipulated that State Farm was the primary insurer, and that its policy limits for purposes of this action were $100,000.00. It was further stipulated that Farmers Insurance uninsured motorist coverage was excess over State Farm's and that it had a limit of $50,000.00. Therefore, the $50,000.00 judgment against Farmers represents an award to the plaintiff of $150,000.00. As plaintiff has $11,372.32 of special damages, the balance of $138,627.68 must be attributed to general damages.
Farmers raises only two issues on appeal. First, that the award of general damages was so excessive as to be manifestly erroneous; and, secondly, that the failure to find any comparative negligence on the part of the plaintiff was manifest error.

*1267 I. THE AWARD OF GENERAL DAMAGES WAS NOT MANIFESTLY ERRONEOUS
The trial court found that the injuries sustained by the plaintiff were permanent and interfere with the practice of his specialty as a physician. Plaintiff was required to undergo an orthoscopic surgery and a later shoulder reconstruction. The scarring sustained by plaintiff as a result of surgery is very noticeable and unaesthetic. Plaintiff's left shoulder is now lower and smaller than his right which also makes him feel less attractive. Plaintiff testified that he has suffered both physically and mentally[2] because of this accident. There is nothing so internally inconsistent in his testimony that this Court could say that it was manifest error for the finder of fact to credit that testimony.[3] Farmers concedes that it can show no manifest error in the trial court's finding that plaintiff's injuries were sustained as a result of the second accident and not the first.[4] Additionally, this Court finds no manifest error in the award of general damages that was implicit in the judgment against Farmers.
Because general damages are by their very nature insusceptible of precise calculation, the trial court's discretion in fixing such awards is "... `great,' and even vast, so that an appellate court should rarely disturb an award of general damages." Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La. 1993), cert. den. by Maritime Overseas Corp. v. Youn, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
We cannot say that the award in this case is so high that it represents an abuse of the great and vast discretion allowed the fact finder in fixing general damages. Only if this Court had found the existence of such an abuse of discretion, would a resort to prior awards be appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, supra, at 1260. Therefore, although we have reviewed the cases cited by the parties along with others, this Court does not feel called upon to include a survey of those cases in this opinion.

II. THE COMPARATIVE NEGLIGENCE OF THE PLAINTIFF
Farmers contends that the failure of the plaintiff to remove his vehicle from the roadway contrary to LSA-R.S. 32:141 A was negligence and a contributing cause of the accident. LSA-R.S. 32:141 A provides:
Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left free for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway. [Emphasis added]
As may be seen from the following colloquy with counsel for Farmers Insurance, the trial court refused to even consider the possibility of comparative fault (Emphasis added throughout):
THE COURT: We're talking about comparative fault or not moving the vehicle?
MR. VASSER: Yes, sir.
THE COURT: Let me say why I'm going to disallow it and cut it short. Okay. The police absolutely refuse to enforce that ordinance, to my great chagrin. We have all seen the fender-benders that's worth $25 on the Expressway in the morning and it's *1268 probably costing the City in lost time $10,000, huh? And I say why don't they arrest those people for not moving their cars off. They don't do it. As a matter of fact, you know what I find out, I swear to God this is true, I was getting my driver's license renewed in Troop B and picked up the little book on highway regulations and in the State Highway regulations it said then, I don't know if it still says it, if you're in a vehicle you must not move your vehicle until the police arrive. I couldn't believe my eyes. I know better because I try cases on a second accident all the time and I know failure to move is fault, theoretically, but Laird versus Travelers tells us that the presence of an ordinance is not automatic negligence per se anymore, violation of an ordinance. There may be reasons excusing non-compliance. This screams for non-compliance. The public is misled by the Police Department, by the doggone book that tells you how to pass the driver's exam, by the universal belief that you are not supposed to move your vehicle, and I'm not going to find any fault. Okay. I would love to, but I won't do that.
MR. VASSER: For not moving the vehicle, I understand.
THE COURT: Right. It's an ordinance that has been repealed by the public and the Police Department by non-application, nobody knows about that law. They do not know about it.
The trial court refused to consider the issue of comparative negligence. There is no support in the record or in the law that would permit the trial court to make the findings regarding the law of stopped vehicles that it made. As stated by the trial court, Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714, 718 (1972) does, indeed, say that: "`Criminal statutes are not, in and of themselves, definitive of civil liability' and do not set the rule for civil liability ..." But the Laird court at 267 So.2d at 717 and 718 goes on to conclude that: "... they may be guidelines for the court in fixing civil liability." Thus, while the trial court was correct in assuming that a criminal statute may not create liability per se (which is different from negligence per se), it was error to assume that such statutes may be ignored:[5]
We have said of this particular statute [LSA-R.S. 32:141A] that it is a highway safety measure designed to keep open the traffic arteries. It recognizes the danger inherent when motor vehicles are parked or stopped upon the travelled portion of the highway. When such a stopped vehicle fully occupies a lane of traffic, not only is passage impaired or blocked but a following driver finds it difficult to ascertain quickly whether such a vehicle is moving or motionless .... We have held as a matter of court policy that this statute is designed to protect against the risk that a driver, whether cautious or inattentive, would collide with a stationary vehicle. [Emphasis added]
Laird, supra, 267 So.2d at 718.
Ultimately the Laird court found the stopped vehicle was not at fault in causing the accident because it was parked almost entirely off the road:
His vehicle occupied at most two and three-fourths feet of the 20-foot paved travelled portion of the highway.... *1269 While it is difficult for other traffic to determine whether a vehicle using all or nearly all of a travelled lane is moving or stopped, the presence of a vehicle as far off the highway as was the Laird truck indicates that it is a non-moving, or at least a slow-moving, vehicle, and is as obvious a warning to other traffic as a red flag ... The more than adequate road signs, warning that there was highway construction[[6]] or repair work in the area, should have alerted every driver that part of the highway ahead might be blocked so as to require the stopping of his vehicle or at least the maneuvering of it into another traffic lane.
Finally, ... a person standing by the stopped vehicle recognized the impending danger from the vehicle which bore down from the rear and tried to warn the oncoming driver by shouting and waving. [Emphasis added]
Laird, supra, 267 So.2d at 719.
This Court finds that it was negligence for the plaintiff to allow his non-disabled vehicle to remain parked in a traffic lane of Airline Highway for over an hour while he sat in the vehicle reading a newspaper. Plaintiff's action and/or failure to act was a cause in fact and legal cause of the accident and the injuries that he sustained. Plaintiff had a duty to remove his vehicle from a travelled lane of the highway, and the accident which occurred in this case was one of the risks that duty was designed to prevent. LSA-R.S. 32:141. The plaintiff acknowledged in his own testimony that he recognized the danger of leaving his vehicle where it was, but he gave no legally sufficient reason for doing so. A prudent man would not have done so.
LSA-R.S. 32:141 allows for the possibility that a disabled vehicle may sometimes have no choice but to stop on the highway. But the statute requires that the driver of even the disabled vehicle "... shall remove it as soon as possible, and until it is removed it is his responsibility to protect traffic." The duty of the driver of a non-disabled vehicle to remove it is thus much clearer and more immediate. This Court does not have the authority to read LSA-R.S. 32:141 out of the law. We cannot afford to send a message that would allow the public to conclude that the leaving of a non-disabled vehicle for over an hour in a traffic lane of a main thoroughfare is an acceptable practice no matter how common it may be.
However, Mr. May's negligence was even more inexcusable. Based on the record before us, we have no choice but to conclude that he had a clear and unobstructed view of plaintiff's vehicle which had its distress lights flashing. Mr. May might be forgiven for not realizing that plaintiff's vehicle was fully stopped in a traffic lane, as not all vehicles flashing their warning lights are stopped. But he should have at least noticed the warning lights flashing on plaintiff's vehicle and that he was rapidly overtaking a vehicle that if not stopped was at most moving much more slowly than he was. Farmers Insurance has made no serious attempt to disprove plaintiff's contention that Mr. May had ample space to go around him and avoid the collision. Therefore, even though this Court believes that this was one of the types of accidents that LSA-R.S. 32:141 was specifically intended to prevent, and that we cannot condone plaintiff's prolonged failure to comply with the statute when he had every opportunity to do so, we conclude that the vast proportion of causation in this case must be laid at the feet of Mr. May. On a comparative basis we would assign only 5% of the fault to the plaintiff and the balance of 95% to Mr. May and Farmers Insurance.
*1270 For the foregoing reasons, the judgment of the trial court is reversed in part and 5% of the fault is hereby assigned to the plaintiff whose award shall be reduced accordingly. In all other respects the judgment of the trial court is affirmed.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] Farmers Insurance suggests in its brief that the accident occurred at 8:50 a.m. from which its argues that Mr. Mays' negligence was compounded by the existence of rush hour traffic which increased the danger created by stopping a vehicle in a moving lane of traffic. There is no evidence in the record that says that this accident occurred at 8:50 a.m.
[2] Dr. Wood expresses anxiety about the way this accident could affect his career, and embarrassment about the scarring and disfigurement he sustained as a result of the accident.
[3] At trial Farmers Insurance alluded to some contradictory statements made by plaintiff in a prior deposition. Farmers Insurance makes no mention of this deposition or the alleged contradictions in its brief. Therefore, we consider that issue to have been abandoned on this appeal.
[4] The plaintiff, Dr. May, was the only witness who testified at the trial. The only other evidence consisted of Dr. Brunet's deposition, pictures of plaintiff's car after the accident, and medical reports and records. All of these items were entered by stipulation of the parties.
[5] This Court is of the opinion that where the trial court has made an error of law of this nature that does not appear to have colored its fact finding and credibility determinations that it is not grounds for us to conduct a de novo review of the evidence. The error that was made by the trial court in this case bears no relation to the policy considerations that give rise to the manifest error rule, e.g., the ability to observe the demeanor of the witnesses first hand, etc. This is especially true where, as in the instant case, there was no jury whose attitude on other aspects of the case could arguably have been influenced by the trial judge's view of the law of stopped vehicles. Plaintiff acknowledges in his brief that the manifest error standard of review is appropriate in this case:

The plaintiff-appellee alleged that the second accident caused a cervical strain which resolved itself within one month, and also alleged injury to his left shoulder. There is a question of fact whether the shoulder injury occurred in the first accident or the second accident. However, the lower court's ruling on that issue in favor of the plaintiff would not appear to be manifestly erroneous, and thus that issue is not before this court. [Emphasis added]
[6] Poland v. Glenn, 623 So.2d 227 (La.App. 2 Cir.1993), writ den. 629 So.2d 1171 (La.1993) like Laird, supra, is distinguishable from the instant case because it, like Laird, involved a well marked construction zone. In Poland this zone narrowed the interstate highway to only one lane. The Poland court stated at 232:

A reasonably prudent driver would have used increased caution when traversing a construction area. The possibility that traffic will stop due to construction activities should be anticipated.
The Poland court also stated commencing at 231:
Moreover, a violation of LSA-R.S. 32:141 constitutes negligence per se, but is only actionable when it is shown that the failure to follow the statute was a legal cause of the accident.